## MOSSBERG PRESSED STEEL CORPORATION v. CHACE.

### No. 228.

District Court, D. Massachusetts.

Feb. 9, 1940.

H. B. Barlow, of Providence, R.I., for plaintiff.

John E. Chace, pro se.

SWEENEY, District Judge.

This action involves an alleged infringement of United States Patent No. 1,479,397, issued on January 1, 1924, to Frank Moss-berg. The defendant asserts that the patent is invalid, and denies infringement.

### Findings of Fact

The plaintiff is the owner of Patent No. 1,295,565, issued under date of February 25, 1919, and now expired. This patent will hereinafter be referred to as the first Mossberg patent. The plaintiff is the owner of Patent No. 1,497,397, issued on January 1, 1924. This patent is the one in issue, and will hereinafter be referred to as the second Mossberg patent. The defendant in substance says that the carrier manufactured by him does not infringe the second Mossberg patent, but that it reads directly on the claims of the first Mossberg patent, which is now expired. He further claims that his device was a simple development of the old Janssen patent of 1904. The second Mossberg patent relates to, and the infringing structure is, a carrier to be used in a braiding machine. A braiding machine has a top plate with crossing serpentine raceways, and the device, which operates in these raceways and carries the twine that is later transformed into braid, is called the carrier.

The aim sought in any carrier is high speed operation with quick stoppage in the event of breakage of any of the twine. The carriers utilized in the machine each convey twine to the central outlet where the braid is formed. Quite naturally if any of the twine breaks during operation, not only does a defective braid result, but there may be considerable snarling in the machine. The necessity for a quick and automatic stoppage of the machine in the event that the twine is broken is apparent.

Janssen (United States Patent No. 753,-199, issued on Februray 23, 1904) disclosed a carrier made of heavy iron with a tension weight which was supported by the twine while in operation. If the twine became broken the weight, no longer supported by the twine, dropped to a position where it could engage a stop lever. The difficulty with the Janssen device was that when the machine operated at high speed the centrifugal force limited the fall by gravity of the weight which was to engage with the stopping lever.

In 1919 the first Mossberg patent was issued, and this was a decided improvement over Janssen. It provided for a construction which was much lighter, and utilized an "extremely long and very yieldable coil spring" to act on the engaging weight. The force of the spring tended to eliminate the

action of centrifugal force. There were other improvements claimed by Mossberg, but the substantial improvement over Janssen was that he was able to get greater speed out of the machine, and at the same time provide for quicker stoppage. While Mossberg eliminated much of the fault of the Janssen construction, he developed what proved to be another fault by so arranging the parts of his invention as to necessitate the use of right and left hand carriers. The weight standard was located forward of, and to the right or left of, the guide standard. It was impractical and probably impossible to design a weight for this carrier which would operate on either side while the machine was in operation. Since the carriers operated in crossing serpentine raceways, there was a right and left hand travel-path to the point of engagement with the stop lever, and the carriers approached the stop lever either from the right or left side. It was therefore necessary to manufacture and employ right and left hand carriers. This device was generally accepted in the trade as being an improvement over Janssen, and in spite of the left and right hand construction newer and better results were obtained. Whether this approached patentable invention is unnecessary to decide since the patent has now expired.

In 1924 the second Mossberg patent issued, and this is the patent which is alleged to be infringed. The plaintiff relies on claim 1 only of its patent. That claim reads as follows: "1. A carrier for braiding machines having a package spindle, a tension weight guide standard, a weight slidable thereon, a coil compression spring on said standard acting upon said weight, a feed control latch, and a guide standard for the latch lift located intermediate said weight standard and package spindle."

The construction of the carriers under the first Mossberg patent had developed the weakness called to attention above. To eliminate this, Mossberg transposed the guide standard to a position intermediate the weight standard and the package spindle, placing the three standards in alignment. The weight was then equipped with two arms, so that the same carrier might operate as either a left or right hand carrier. This eliminated the necessity of having separate carriers—that is, left and right hand carriers.

Other improvements in construction were developed which are not claimed as invention, but which resulted in a better type of carrier.

As an instance of this, the new arrangement of the weight and guide standards provided more even and uniform tension in the twine. This resulted from the fact that the included angle formed by the engagement of the twine with the weight catch was more constant. In the first Mossberg patent the angle varied as the weight was elevated. However, there is nothing of patentable invention in this result. The real improvement was in so aligning the standards as to permit the use of a weight equipped with both left and right engaging arms, thus eliminating the need for left and right hand carriers. Such arrangement does not reach the dignity of patentable invention. It is an improvement resulting from the use of mechanical skill. Neither was it novel. The same idea existed in Janssen who utilized a two-arm weight in the same manner. I therefore rule that the second Mossberg patent is invalid for want of patentable invention.

If I am wrong in the above, it would be necessary to consider the question of infringement. The defendant's structure is almost identical with the plaintiff's structure, and reads directly on claim 1 of the second Mossberg patent. I therefore conclude that if the second Mossberg patent is valid, the defendant's structure infringes it.

A decree may be submitted in accordance with the above.